UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

--------------------------------------------------.

SECURITIES AND EXCHANGE

COMMISSION,

   Plaintiff,          23 Civ 1243 (SVN)

v.

MICHAEL CARIDI,

   Defendant.

--------------------------------------------------.

## MOTION TO VACATE SETTLEMENT AGREEMENT DUE TO BAD FAITH, PROMISSORY ESTOPPEL, AND VIOLATION OF FAIR DEALING PRINCIPLES

TO THE HONORABLE COURT: Defendant Michael Caridi (hereinafter referred to as "Defendant"), acting pro se, respectfully moves this Court to vacate the settlement agreement reached with the Securities and Exchange Commission (hereinafter referred to as "SEC") on the grounds that the SEC acted in bad faith, violated principles of fair dealing, and breached duties owed to Defendant during the settlement process. This motion is further supported by the doctrines of promissory estoppel and detrimental reliance.

**INTRODUCTION** Defendant entered into a settlement agreement with the SEC under conditions explicitly agreed upon during pre-settlement communications, including the SEC's promise, through its agent Christopher Colorado, that no press release would be issued concerning the settlement. Defendant's acceptance of the settlement was contingent upon this assurance. This agreement was reaffirmed

through one email sent to the SEC (See Exhibit A), confirming the understanding that no press release would be issued. However, on January 2, 2025, the SEC released a press statement that violated this explicit promise. This breach has caused significant and irreparable harm to Defendant's reputation, professional opportunities, and financial stability. Why is the SEC involved when the Canadian Court system is already adjudicating this matter?

## STATEMENT OF FACTS

The following additional facts support Defendant's position:

- Defendant communicated multiple times with the SEC, both via email and voicemail, to confirm that no press release would be issued.
- This communication, detailed in Exhibit A, demonstrates that SEC agent Christopher Colorado explicitly reassured Defendant of this condition.
- Despite these assurances, the SEC knowingly issued a press release, referenced in Exhibit C, causing substantial harm to Defendant.

1. Defendant was involved in a commercial dispute with Chu de Quebec, a hospital system in Canada and a client of Tree of Knowledge International Corp. ("TOKI"), a publicly traded Canadian company, where Defendant was a board member but no longer the President.
2. In March 2020, Defendant secured a contract to supply 3,000,000 N95 masks for TOKI, a Canadian public company trading primarily on the Canadian Securities Exchange (CSE) with minimal trading on the U.S. bulletin board. This effort aimed to secure emergency supplies and generate revenue for a company previously operating in the pain management and cannabis industries. Due to supplier issues, KN95 masks were delivered instead, leading to a contractual dispute.

3. The purchasing hospital initially agreed to test the masks before finalizing the contract but later initiated a recall on funds. This recall severely impacted TOKI's financial standing and prevented the completion of a large glove contract.

4. The hospital pursued legal action against TOKI and Defendant individually, leading Canadian financial institutions to terminate longstanding banking relationships with Defendant, his wife, and his son Daniel Caridi, as well as their businesses in the United States.

5. Despite this being a Canadian dispute, the SEC became involved, alleging that Defendant failed to issue a press release regarding the repayment agreement with the hospital. This begs the question why the SEC was involved at all. It had been previously investigated by the CSE with no wrongdoing ultimately decided. Why would the SEC get involved unless they were asked to by an interested party? At that time, Defendant was no longer the President of TOKI, and all authority for issuing a press release rested with the new President. In my opinion this is weaponization by one of the US agencies.

6. Defendant cooperated with SEC investigations but was initially advised by counsel not to meet with them. Defendant was already financially ruined by the Canadian court system, making pro se representation both a necessity and an impossibility. The SEC then initiated litigation, producing 630,000 pages of disorganized discovery, making self-representation burdensome.

7. During settlement negotiations, the SEC stated that disgorgement would not be pursued but later subpoenaed Defendant's sons, both age 27, Daniel and Nicolas Caridi, as well as their banks. This pressured Defendant into accepting an about-face on disgorgement being included in the settlement. Defendant faced an impossible situation—either accept an unjust settlement

or risk devastating financial consequences for his son's new business, which provides essential services to vulnerable communities. Given the SEC's leverage, Defendant had no real choice but to settle under duress. If Daniel lost his last bank account, his business would be forced to close. Without me settling I was deeply concerned about my sons' futures. The SEC had full knowledge of any revenue Defendant's sons received as employees of TOKI, including back pay, as they had access to all bank accounts and audit records of the public company. This was an attempt at lawfare to pressure Defendant into accepting an egregious settlement. Additionally, during the litigation, Defendant's wife suffered a stroke, and Defendant faced foreclosure on his personal residence, which was used as collateral for a real estate project.

8. Defendant settled under duress, compelled by explicit assurances from SEC agent Christopher Colorado that no press release would be issued. Critically, these assurances—documented via one email and a voicemail—formed the primary basis for Defendant's decision to sign the settlement. Defendant confirmed this agreement via one email and a voicemail (See Exhibit A), trusting the SEC's representations, and thus omitted any press-release clause from the final written agreement. Without these promises from the SEC, Defendant would not have entered into a settlement on the terms agreed upon."I left you a voicemail, a few additional points, one on $180,000. I would need one year to pay it out in quarterly payments. Also just confirming no press releases on the settlement and SEC or I would not have any comment if press did reach out to you." The SEC may argue that this provision was not included in the written agreement; however, oral and written assurances—particularly from an SEC agent—can create binding obligations under doctrines like estoppel and fair dealing. Defendant's

reliance was reasonable, and the omission of this clause was based on the SEC's explicit representations.

9. On January 2, 2025, the SEC issued a press release (See Exhibit B) in direct violation of its assurance, causing widespread reputational harm, media coverage, and financial loss for Defendant, including the loss of a family home.

**ARGUMENT** I. **The SEC Acted in Bad Faith and Violated the Doctrine of Fair Dealing** The SEC's actions constitute bad faith and a breach of its duty of fair dealing. The assurance given by Christopher Colorado regarding the absence of a press release created a reasonable expectation upon which Defendant relied when entering into the settlement agreement.

Government agencies are bound by the principles of good faith and fair dealing when engaging in contractual negotiations. The SEC's failure to uphold its promise and weaponization of government demonstrates a fundamental breach of these principles, undermining trust and fairness in its dealings. Here, the SEC's failure to honor its explicit promise undermines these principles and vitiates the settlement agreement.

II. **Promissory Estoppel Bars the SEC from Issuing the Press Release**
Promissory estoppel applies when a promise is made, relied upon, and causes significant harm due to the promisor's failure to uphold the promise.

1. The SEC, through Christopher Colorado, made a clear and unambiguous promise that no press release would be issued.
2. Defendant reasonably relied on this promise when entering into the settlement agreement, foregoing further litigation and other legal remedies.

3. The issuance of the press release has caused substantial harm to Defendant, including reputational damage, financial losses, and significant personal distress.

III. **The SEC's Reckless and Negligent Conduct Warrants Relief** The SEC's decision to issue the press release, despite explicit assurances to the contrary, demonstrates a lack of due care and reckless disregard for the consequences of its actions. This conduct is particularly egregious given that the SEC is a government agency tasked with upholding principles of fairness and justice.

Government agencies have a duty to act transparently and in the public interest, and the SEC's failure to adhere to its commitments demonstrates a reckless departure from this duty. By failing to uphold its commitments, the SEC has caused significant harm to Defendant, both professionally and personally.

IV. **The Settlement Agreement Should Be Vacated Due to Fraudulent Inducement** A settlement agreement procured through fraudulent inducement is voidable. By misrepresenting its intentions regarding the issuance of a press release, the SEC fraudulently induced Defendant into entering the settlement agreement.

**PRAYER FOR RELIEF** WHEREFORE, Defendant respectfully requests that this Court:

1. Vacate the settlement agreement between Defendant and the SEC;
2. Sanction the SEC and its agents for bad faith conduct and violation of fair dealing principles;
3. Issue an order prohibiting the SEC from issuing further press releases or communications regarding this matter;

4. Grant any other relief that the Court deems just and proper.

Respectfully submitted,

Michael Caridi Pro Se Defendant 32 Cutler Rd. Greenwich, CT 06831

mcaridi1225@gmail.com 917.295.1374

# EXHIBIT A

**From:** Michael Caridi <mcaridi1225@gmail.com>
**Date:** October 14, 2024 at 10:45:53 AM EDT
**To:** "Colorado, Christopher" <coloradoch@sec.gov>
**Subject: Re: SEC v. Caridi, 23-cv-1243 (D. Conn.) - Subject to FRE 408**

I left you a voicemail, a few additional points, one on $180,000. I would need one year to pay it out in quarterly payments. Also just confirming no press releases on the settlement and SEC or I would not have any comment if press sis reach out to you.
Michael Caridi
32 Cutler Road
Greenwich, CT 06831
(917)295-1374
Mcaridi1225@gmail.com
Deo Optimo Maximus

On Oct 14, 2024, at 10:27 AM, Colorado, Christopher <coloradoch@sec.gov> wrote:

Michael: I have not heard back from you confirming the settlement in principle.

I am attaching a few documents, including as we discussed:

· First, is our Second Amended Complaint, showing in a redline the proposed amendments to Paragraphs 96 and 97. Unless I hear from you on the settlement in principle, we intend to file our motion requesting leave to file the amendment tomorrow. Please let me know by tomorrow at noon if you consent to our motion.

· Second, I am attaching a Notice of Deposition for your deposition.

· Third, I am attaching an amended Notice of Deposition for the deposition of Scott Reeves, which has been rescheduled for October 23 as agreed.

Thank you,

Chris

**Christopher M. Colorado**

Senior Trial Counsel

New York Regional Office

**OFFICE**   +1 212-336-9143

**MOBILE**   +1 267-734-5374

ColoradoCh@sec.gov

# EXHIBIT B

