UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SECURITIES AND EXCHANGE
COMMISSION,

                              Plaintiff,

              -against-                                    3:23 Civ. 1243 (SVN)

MICHAEL CARIDI,

                              Defendant.


**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT MICHAEL CARIDI'S MOTION TO
VACATE THE CONSENT JUDGMENT**


                                        Christopher M. Colorado

                                        *Attorney for Plaintiff*

February 24, 2025

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ..........................................................................................4

I.    The SEC's Amended Complaint Alleges That Caridi Engaged in Securities Fraud ..........4

II.   After Multiple Adverse Court Decisions Were Issued as to Caridi, the Parties
      Engaged in Settlement Negotiations ....................................................................5

III.  Caridi and His Counsel Reviewed the Consent, Which Expressly Confirms
      That SEC Counsel Did Not Make Any Promises to Him ..................................8

IV.   The Commission Authorized the Settlement, and the Court Approved the Settlement
      Terms and Entered the Final Judgment ..............................................................10

V.    The Commission Issued a Litigation Release About the Final Judgment ........................11

      A.    The Commission's Practices as to Litigation Releases and Press Releases ..........11

      B.    The SEC Issued a Litigation Release About the Final Judgment but
            Not a Press Release ...................................................................................12

STANDARD OF REVIEW .......................................................................................12

ARGUMENT .............................................................................................................15

I.    Caridi Cannot Satisfy Rule 60(b)(3) Because the SEC Made No Misrepresentation
      to Him ...............................................................................................................15

II.   Caridi Cannot Satisfy Rule 60(b)(6) Because He Can Identify No Other
      "Exceptional Circumstances." ...........................................................................19

CONCLUSION..........................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Baltas v. Fitzgerald*,
 No. 21-cv-587 (MPS), 2023 WL 5207316 (D. Conn. Aug. 14, 2023)...................................13

*Best v. Barbarotta*,
 No. 12-cv-6142 (NGG) (SMG), 2019 WL 3886618 (E.D.N.Y. Aug. 19, 2019) ..................17

*Best v. Schecter*,
 No. 12-cv-6142 (NGG), 2018 WL 4635726 (E.D.N.Y. Feb. 22, 2018) ...............................17

*Castro v. Bank of New York Mellon*,
 852 Fed. Appx. 25 (2d Cir. 2021) ........................................................................................14

*Chotkowski v. State*,
 240 Conn. 246, 268-69 (1997) ............................................................................................18

*Dongguk Univ v. Yale University*,
 873 F. Supp. 2d 460 (D. Conn. 2012) ..................................................................................13

*Eastern Savings Bank v. Marcus*,
 No. 14–cv–1059 (DJS), 2015 WL 5472314 (D. Conn. Sept. 16, 2015) ..............................18

*Empresa Cubana Del Tabaco v. General Cigar Co.*,
 385 F. App'x. 29 (2d Cir. 2010).............................................................................................13

*Gleason v. Jandrucko*,
 860 F.2d 556 (2d Cir. 1988)..................................................................................................14

*Krasniqi v. A Better Way Wholesale Autos, Inc.*,
 No. 18-cv-00058 (VLB), 2018 WL 11462399 (D. Conn. Dec. 13, 2018) ................13, 16, 19

*Leser v. U.S. Bank National Association*,
 No. 09-cv-2362, 2014 WL 2154993 (E.D.N.Y. May 22, 2014) ...........................................21

*Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities*,
 13 F.4th 247 (2d Cir. 2021)...................................................................................................13

*Manney v. Intergroove Media GMBH*,
 No. 10-cv-4493 (SJF), 2014 WL 1224171 (E.D.N.Y. Mar. 24, 2014) .................................17

*McIntosh v. Consolidated Edison*,
 No. 96-cv-3624, 1999 WL 151102 (S.D.N.Y. Mar. 19, 1999) .............................................20

*Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*,
    970 F.3d 133 (2d Cir. 2020) ................................................. 14

*Nemaizer v. Baker*,
    793 F.2d 58 (2d Cir. 1986) ................................................. 14

*Ojo v. U.S.*,
    No. 15-cv-6089 (ARR), 2024 WL 3535415 (E.D.N.Y. July 25, 2024) .......................... 13, 15

*Pastor v. Partnership for Children's Rights*,
    856 Fed. Appx. 343 (2d Cir. 2021) ................................................. 14, 19

*Playboy Enterprises International v. On Line Entertainment, Inc.*,
    No. 00-cv-6618 (DGT), 2004 WL 626807 (E.D.N.Y. Mar. 29, 2004) ................................ 20

*Powell v. Omnicom*,
    467 F.3d 124 (2d Cir. 2007) ................................................. 15

*Schiel v. Stop & Shop Co., Inc.*,
    No. 96-cv-1742 (WWE), 2006 WL 2792885 (D. Conn. Sept. 6, 2006) ................... 14, 19, 22

*SEC v. Alexander*,
    No. 06-cv-3844 (NGG) (RER), 2013 WL 5774152 (E.D.N.Y. Oct. 24, 2013) .................... 14

*SEC v. Caridi*,
    No. 23-cv-1243 (SVN), 2024 WL 4349015 (D. Conn. Sept. 30, 2024) ................................ 6

*SEC v. Cohen*,
    671 F. Supp. 3d 319 (E.D.N.Y. 2023) ................................................. 15

*SEC v. Conradt*,
    309 F.R.D. 186 (S.D.N.Y. 2015) ................................................. 14

*SEC v. NIR Group, LLC*,
    No. 11-cv-4723 (JMA) (AYS), 2022 WL 900660 (E.D.N.Y. Mar. 28, 2022) ...................... 14

*SEC v. Penn*,
    No. 14-cv-581 (VEC), 2019 WL 12275915 (S.D.N.Y. Jan. 3, 2019) .................................... 21

*Smith v. CVS Albany, LLC*,
    No. 20-4000, 2022 WL 3022526 (2d Cir. Aug 1, 2022) ................................................. 14-15

*Spaulding v. N.Y.C. Department of Education*,
    407 F. Supp. 3d 143 (E.D.N.Y. 2017) ................................................. 17

*Speaks v. Donato*,
    214 F.R.D. 69 (D. Conn. 2008) ................................................. 13, 16

*Spurgeon v. Lee*,
    No. 11-cv-600 (KAM), 2019 WL 569115 (E.D.N.Y. Feb. 11, 2019)....................................15

*State Street Bank and Trust Co. v. Invesiones Errazuriz Limitada*,
    246 F. Supp. 2d 231 (S.D.N.Y. 2002) ...........................................................18

*United States v. International Brotherhood of Teamsters*,
    247 F.3d 370 (2d Cir. 2001) ..............................................................13, 14

*United States v. ITT Continental Baking Co.*,
    420 U.S. 223 (1975) ........................................................................14

*United States v. Sybaritic, Inc.*,
    456 F. Supp. 2d 1160 (D. Minn. 2011) ...........................................................17

*United States Regional Economic Development Authority LLC v. Matthews*,
    No. 16-cv-01093 (CSH), 2017 WL 5992384, at *7 (D. Conn. Dec. 4, 2017) ....................19

**Rules**

FRCP Rule 60(b)(3).......................................................................... 12-17, 19

FRCP Rule 60(b)(6)..........................................................................12-14, 19-21

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this memorandum of law in opposition to Defendant Michael Caridi's ("Caridi") motion to vacate the consent judgment entered against him on January 2, 2025, as part of his settlement with the SEC. (ECF No. 13 (the "Motion").)  For the reasons below, the Motion should be denied.

## PRELIMINARY STATEMENT

On November 26, 2024, Caridi—an experienced businessperson who has served as an executive for multiple publicly traded companies—delivered to the SEC a signed and notarized offer to settle the SEC's claims against him, in the form of a Consent to Judgment ("Consent"). Although Caridi is proceeding *pro se* in this case, he asked an attorney, who had represented him in the SEC's investigation that preceded this litigation, to review the Consent before Caridi signed and delivered it, and that attorney communicated with the SEC about the settlement.  The SEC's five-member Commission later authorized SEC counsel to accept Caridi's settlement offer, and the Court entered the final judgment against him ("Final Judgment"), which attached Caridi's signed Consent.

Under the terms of the Consent and Final Judgment, Caridi agreed, among other things, to pay a $180,000 civil penalty in five installments with the first installment of $80,000 due by February 1, 2025.  Caridi did not pay the first installment.  Instead, on February 3, he filed the Motion asking the Court to vacate the Final Judgment because he claims that, before he signed and delivered the Consent, SEC counsel purportedly promised him the SEC would refrain from issuing a "press release" about the settlement and that the SEC breached that purported promise by posting a litigation release to its website summarizing the Final Judgment.  Caridi's claim about a promise is false, contradicted by the terms of his signed Consent, and unsupported by any evidence.

1

Neither the SEC nor its counsel made any promise to Caridi about any press release or other public statement concerning any topic.  In fact, when Caridi offered settlement terms and consented to the entry of a final judgment, he explicitly acknowledged that no promises—about a press release or otherwise—had been made to him by the SEC or its counsel.  Specifically, the Consent Caridi signed makes clear that "no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce [Caridi] to enter the Consent."  Neither the Consent nor the Final Judgment (nor any other document) reflect any promise by the SEC to refrain from issuing a press release or any other public statement because no such promise was made.

In December 2024, the SEC publicly filed the Consent, along with a consent motion requesting entry of the proposed Final Judgment on the case docket.  On January 2, 2025, the Court entered the Final Judgment and it was filed on the docket.  On January 8, in accordance with its policy concerning informing the public of the SEC's litigated enforcement actions, the SEC posted a "litigation release" to its website.  That litigation release briefly summarized the SEC's allegations (mirroring a summary in a litigation release that the SEC had posted to its website when it commenced this action in September 2023) and the terms of the Court's Final Judgment, including that Caridi neither admitted nor denied the allegations.

Caridi now ignores his own contemporaneous acknowledgment that no promises had been made to him and claims that a promise and agreement by the SEC not to issue a "press release" about the settlement existed based on an email and voicemail in which *he proposed* that neither he nor the SEC respond to press inquiries about the settlement and that the SEC not issue a press release about it.  But that proposal, like some others Caridi made during settlement discussions, was *rejected* and was not included in the Consent or Final Judgment.

In these circumstances, Caridi is not entitled to the extraordinary relief of vacating the Court's Final Judgment.  The Second Circuit has established that when a defendant, like Caridi, asks to undo a consent judgment and settlement—that is, to relieve him of a contract to which he has voluntarily agreed—he faces a steep burden:  he must identify unequivocal evidence that a material misstatement was made to him and that he reasonably relied on it in agreeing to the settlement.  Caridi cannot meet that burden.  No evidence, much less unequivocal evidence, supports his claim that the SEC promised not to issue a "press release" following the settlement.  Nor would any such promise or agreement even if made (which it was not) be material.  The core terms of the Final Judgment were the monetary relief—the civil penalty and disgorgement amounts—and the injunctive relief Caridi and the SEC negotiated and the finality that settlement offered both parties.  The fact that the SEC publicly issued a short summary of a Final Judgment that ***was already public*** is comparatively unimportant.  (It also bears noting that the "litigation release" that is the subject of Caridi's Motion is something different from a press release, which the SEC does issue from time to time but did not issue here.)

Additionally, Caridi claims that some unspecified business relationships of his have been disrupted as a result of the SEC's litigation release.  But he offers no evidence of any such disruption, its timing, or its causal connection to the litigation release about the already-public Final Judgment.  Indeed, any such business disruption is likely the result of a 2024 ruling by a Canadian trial court—following a bench trial in a case covered in the Canadian press—finding that Caridi, at the outset of the Covid-19 pandemic, defrauded a non-profit Canadian teaching hospital and is personally liable to that hospital for more than $11 million.  (The SEC's Amended Complaint alleges that Caridi made materially misleading statements or omissions about this transaction in press releases aimed at investors.)

For these reasons, and as discussed further below, Caridi's Motion, and his attempt to avoid the consequences of the settlement to which he freely agreed, should be denied.

## STATEMENT OF FACTS

### I.    THE SEC'S AMENDED COMPLAINT ALLEGES THAT CARIDI ENGAGED IN SECURITIES FRAUD.

In September 2023, the SEC filed its Complaint alleging that Caridi had engaged in securities fraud by deceiving investors in the company he led, Tree of Knowledge International ("TOKI"), a company whose securities were publicly traded in the United States.  (ECF No. 1.) The SEC filed an Amended Complaint on January 22, 2024.  (ECF No. 16.)  The Amended Complaint alleges that Caridi deceived investors about the failure of the largest transaction in TOKI's history and Caridi's misappropriation of corporate assets for his own benefit and the benefit of his family and business associates, as described in more detail below.

The SEC's Amended Complaint alleges that at the outset of the Covid-19 pandemic, Caridi—who was then TOKI's Chief Executive Officer and Chairman of its Board of Directors—caused TOKI and its U.S.-based subsidiary (together, the "TOKI Entities") to enter into a contract to provide N-95 respirator masks to a teaching hospital, CHU de Québec-Université Laval ("CHU"), in exchange for CHU paying $13 million to the TOKI Entities. (¶¶ 24-29.)[1]  As alleged in the Amended Complaint, CHU paid the TOKI Entities but the TOKI Entities supplied no N-95 masks to CHU.  (¶¶ 30-31, 33, 39-42.)  Then Caridi misappropriated more than $1.1 million of the $13 million of transaction proceeds and transferred millions more to his business associates and family (including his sons).  (¶¶ 48-52, 54-55.)  The Amended

---

[1] "¶ _" refers to paragraphs of the SEC's Amended Complaint (ECF No. 16).  "Colorado Decl. ¶ _" refers to paragraphs of the Declaration of Christopher M. Colorado, dated February 24, 2025, filed herewith.  "Ex. _" refers to Exhibits to the Colorado Decl.

Complaint further alleges that CHU demanded repayment of the $13 million and that Caridi entered into an agreement for TOKI to repay that money, but that TOKI failed to do so, leaving it with a substantial, undisclosed liability to CHU much larger than TOKI's assets and revenues—which Caridi knew it could not repay. (¶¶ 45-46.)

The Amended Complaint next alleges that Caridi caused TOKI to issue two false and misleading press releases. (¶¶ 58-85.) These releases touted TOKI's successful "pivot" from selling cannabis products to providing medical equipment to hospitals and government entities and also claimed that, despite the onset of the Covid-19 pandemic, TOKI had not experienced any undisclosed material events. (*Id.*) The press releases did not disclose TOKI's failed deal with CHU or that it owed millions of dollars it could not repay. (*Id.*) The Amended Complaint also alleges that Caridi hid the failed N-95 mask deal, his misappropriation, and TOKI's liability to CHU from TOKI's Board. (¶¶ 32, 57, 86-89.) Caridi's misrepresentations were only discovered by others within TOKI when CHU filed suit against him, TOKI, and others seeking repayment of millions of dollars from the failed transaction. (¶ 90.) As a result, TOKI's U.S.-based subsidiary was put into receivership and ceased to exist, and Caridi was forced to resign from the TOKI Entities. (¶¶ 11, 93.)

Based on these and other allegations, the Amended Complaint alleges that Caridi violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder and that he aided and abetted TOKI's violations of Exchange Act Section 10(b) and Rule 10b-5. (¶¶ 6, 95-101.)

## II.    AFTER MULTIPLE ADVERSE COURT DECISIONS WERE ISSUED AS TO CARIDI, THE PARTIES ENGAGED IN SETTLEMENT NEGOTIATIONS.

In July 2024 and September 2024, the Ontario Superior Court of Justice in Canada and this Court, respectively, issued decisions adverse to Caridi and, after those decisions, the parties

in this matter engaged in settlement discussions.  On July 9, 2024, the Ontario Superior Court, after a bench trial, found Caridi personally liable to CHU on a "claim in deceit" based on his false statements inducing CHU to pay $13 million to the TOKI Entities.  (Ex. 1.)  That Court ordered Caridi to pay CHU more than $11.1 million.  (*Id.* at 60, ¶ 310.)  A few months later, on September 30, 2024, this Court denied Caridi's motion to dismiss the Amended Complaint.  *See SEC v. Caridi*, No. 23-cv-1243 (SVN), 2024 WL 4349015 (D. Conn. Sept. 30, 2024).  The Court held that the Amended Complaint adequately pleaded its claims that Caridi knowingly or recklessly made false and misleading public statements or omissions about TOKI and that he aided and abetted TOKI's false and misleading public statements or omissions.  *See id.*

SEC counsel and Caridi then renewed their settlement discussions.  (Colorado Decl. ¶ 6.)  In those discussions, SEC counsel explained to Caridi that SEC counsel could not unilaterally agree to settlement terms; rather, they were required to first request and obtain authority from supervisors to recommend potential settlement terms to the SEC's independent five-member Commission (the "Commission").  (*Id.* ¶ 7.)  As SEC counsel explained to Caridi, if that authority was obtained, then the proposed settlement terms would be set forth in a document comprising Caridi's settlement offer (*i.e.*, the Consent) that Caridi would review and sign, and that the terms of the offer would then be presented to the Commission, together with a recommendation from SEC staff, and the Commission would decide whether to authorize SEC counsel to accept those terms.  (*See, e.g.*, *id.*; *see also* ECF No. 59 (parties' joint stay motion describing this process).)[2]

---

[2] Caridi never suggested that he did not understand this process.  (Colorado Decl. ¶ 8.)  This is not surprising.  Caridi is an experienced businessperson, having founded and led multiple investment and real estate businesses over the past thirty years, in addition to serving as an officer of multiple publicly traded companies.  (Ex. 14 at 24; Ex. 15 at 48; Ex. 16.)

On October 11, 2024, SEC counsel and Caridi identified potential settlement terms to which Caridi was willing to agree and that SEC counsel had obtained authority to recommend to the Commission, and those terms were memorialized in an e-mail to Caridi.  (Colorado Decl. ¶ 9 & Ex. 2.)  Those terms included (1) Caridi's payment of disgorgement in the amount of $895,972, which could be reduced dollar-for-dollar by amounts that Caridi repaid to CHU; and (2) Caridi's payment of a $180,000 civil penalty.  (Ex. 2.)  Those terms did not include any restriction on the SEC's ability to issue a press release or make any other public statement about a settlement, if consummated, or a final judgment, if entered.  (*Id.*)

On October 14, Caridi proposed additional settlement terms.  (Colorado Decl. ¶¶ 10-12 & Ex. 4 at 2.)  In an email, attached to his Motion as Exhibit A, he proposed (1) that he pay the $180,000 civil penalty one year after the Court entered a final judgment; and (2) that he and the SEC agree not to speak to the press, and the SEC not issue a press release, about the settlement. (*Id.*)  The same day, Caridi left a voicemail referencing the same proposed terms and said, "Let me know if that's acceptable and we can wrap this up."  (Colorado Decl. ¶ 11.)

The next day, the parties discussed Caridi's proposals by telephone.  (Colorado Decl. ¶ 13.)  SEC counsel told Caridi that SEC counsel would not recommend settlement terms to the Commission that restricted the SEC's right or ability to make public statements, but that SEC counsel would consider Caridi's request for an extended period to pay the $180,000 civil penalty. (*Id*. at ¶¶ 13-14.)  SEC counsel explained to Caridi that, in its experience, the SEC did not typically issue press releases in cases of this size but made no promises concerning what the SEC

---

The requirement that the Commission review and approve a settlement offer is also explained in the SEC Division of Enforcement's publicly available Enforcement Manual.  *See* SEC, Division of Enforcement, Enforcement Manual (Nov. 28, 2017), at §§ 2.5.1, 2.5.2, http://www.sec.gov/divisions/enforce/enforcementmanual.pdf (last visited Feb. 24, 2025).

would do in this case.  (*Id.* ¶ 13.)  That afternoon, SEC counsel emailed Caridi a potential one-year payment schedule for the $180,000 civil penalty that allowed for it to be paid in five installments, beginning thirty days after entry of a final judgment—although the amount of those proposed payments were different than what Caridi had previously proposed.  (*Compare* Ex. 4 at 1 (proposing an $80,000 initial civil penalty payment, followed by four $25,000 payments) *with* Colorado Decl. ¶ 11 (stating Caridi's proposal to make four $45,000 quarterly payments).)  That email did not make any promise or representation that SEC counsel would agree to Caridi's request concerning a press release or public statement and indeed said nothing about that request because SEC counsel had already told Caridi by telephone that it would not agree to recommend limiting the SEC's public statements.  (*Id.*)  Caridi responded, "Good to go!!"  (*Id.*)

On October 15, the parties filed a Joint Motion with the Court requesting a stay of all deadlines for sixty days "to allow the Parties to finalize settlement documents and to allow SEC counsel to present the settlement terms to the Commission" for its review and approval.  (ECF No. 59.)  The Court granted that motion.

## III.    CARIDI AND HIS COUNSEL REVIEWED THE CONSENT, WHICH EXPRESSLY CONFIRMS THAT SEC COUNSEL DID NOT MAKE ANY PROMISES TO HIM.

On November 12, 2024, SEC counsel sent Caridi an email attaching a draft Consent reflecting the settlement terms discussed.  (Colorado Decl. ¶ 18 & Ex. 5.)  In the same e-mail, SEC counsel provided Caridi with a draft proposed Final Judgment, incorporating the terms of the draft Consent, to be submitted to the Court if Caridi signed and notarized the Consent and the Commission accepted Caridi's settlement offer.  (*Id.*)

The proposed Consent that SEC counsel sent Caridi was identical to the Consent that Caridi later signed and that the SEC submitted to the Court with its proposed Final Judgment. (*Compare*  Ex. 5 at 2-7 *with* ECF No. 64-2.)  The proposed Consent reflected the terms of the

parties' settlement discussions:  Caridi offered to agree to the Court's entry of a Final Judgment

pursuant to which he would, among other things, (1) pay disgorgement of $895,972 within 360

days of the Court's entry of the Final Judgment, but that amount would be offset in equal

amounts by any payments Caridi made to CHU; (2) pay a civil penalty of $180,000, split into

five payments over 360 days, with the first payment of $80,000 due within 30 days of the

Court's entry of the Final Judgment; (3) be permanently barred from trading in penny stocks; and

(4) be barred from acting as a director or officer of a public company for seven years.  (Ex. 5 at

2-3, ¶ 2.)  The proposed Consent expressly permitted the SEC to seek entry of the proposed Final

Judgment without further notice to or agreement from Caridi.  (*Id.* at 7, ¶ 14.)[3]

Consistent with SEC counsel's prior refusal to agree to Caridi's request to limit the

SEC's public statements, the proposed Consent did not limit the SEC's ability to issue a press

release or talk to the press about any effectuated settlement.  (Colorado Decl. ¶ 18 & Ex. 5.)  The

proposed Consent also explicitly stated that neither the SEC nor its counsel had made any

promises or assurances to Caridi:

> Defendant enters into this Consent voluntarily and represents that
> no threats, offers, promises, or inducements of any kind have been
> made by the Commission or any member, officer, employee,
> agent, or representative of the Commission to induce Defendant to
> enter into this Consent.

---

[3] The negotiated settlement includes a disgorgement amount less than the SEC alleged Caridi
misappropriated because it reflects certain expenses that the SEC credited in the settlement
negotiations, and a civil penalty that is less than the more than $230,000 "per violation"
contemplated by statute.  *See* SEC Release No. 34-99276, "Adjustments to Civil Monetary
Amounts," https://www.sec.gov/files/rules/other/2024/33-11263.pdf, at 5 (last visited Feb. 13,
2025).  Here, the SEC alleged at least two securities law violations based on the multiple false
and misleading press releases.  Also, the Court could have imposed a lifetime bar on Caridi
acting as a public company director or officer.

(Ex. 5 at 3-4, ¶ 7.)  The only future public statements addressed in the proposed Consent were potential statements *by Caridi*.  The proposed Consent generally restricted Caridi from denying the Amended Complaint's allegations except in certain enumerated circumstances, given Caridi's offer to settle without admitting or denying the SEC's allegations.  (*Id.* at 5-6, ¶ 12.)

Upon receiving the proposed Consent and Final Judgment, Caridi told SEC counsel that, before he signed and delivered the Consent to the SEC, he wanted his counsel to review it.  (*Id.* ¶ 19.)  Four days later, the attorney who had represented Caridi in the SEC's investigation leading to this action—a seasoned defense attorney in New Jersey—contacted SEC counsel about the meaning and effect of certain terms of the Consent, and SEC counsel provided a response.  (*Id.* ¶ 20 & Ex. 6.)  The attorney did not reiterate Caridi's already-rejected request that the SEC not issue a press release or make statements to the press about the settlement.  (*Id*. ¶ 21.) The next week, Caridi delivered the signed and notarized Consent to the SEC without any changes.  (*Id.* ¶ 22 & Ex. 7.)

## IV.  THE COMMISSION AUTHORIZED THE SETTLEMENT, AND THE COURT APPROVED THE SETTLEMENT TERMS AND ENTERED THE FINAL JUDGMENT.

On December 13, 2024, SEC counsel informed Caridi that the Commission had approved Caridi's proposed settlement terms.  (*Id.* ¶ 25 & Ex. 8.)  Although the Consent's terms allowed the SEC to seek entry of the proposed Final Judgment without further notice to or agreement from Caridi, the SEC notified Caridi, as a courtesy, of its intention to file a motion asking the Court to approve the settlement and enter the proposed Final Judgment.  (*Id*.)  When Caridi asked the SEC to delay its motion seeking entry of the proposed Final Judgment, the SEC agreed to a one-week delay as a further courtesy to Caridi.  (ECF No. 62 ("Caridi has requested the

additional week to enable him to make financial preparations for the monetary terms in the Proposed Final Judgment.").)

On December 27, 2024, the SEC filed a motion, with Caridi's consent, describing the parties' settlement, attaching Caridi's Consent, and requesting entry of the proposed Final Judgment on the case docket.  (ECF No. 64.)  On January 2, 2025, the Court approved the parties' settlement and entered the Final Judgment on the docket.  (ECF No. 65.)  Under its terms, Caridi's first installment payment of $80,000 to the SEC became due 30 days later, on February 1, 2025.

## V.    THE COMMISSION ISSUED A LITIGATION RELEASE ABOUT THE FINAL JUDGMENT.

### A.    The Commission's Practices as to Litigation Releases and Press Releases.

The SEC generally posts a litigation release to its website when it begins or ends an enforcement action.  (Colorado Decl. ¶ 29 & Ex. 9 at 4 (SEC Admin. Reg. No. SECR 18-2, "Media Relations Policy").)  Litigation releases "inform the public of an SEC enforcement action and are a permanent, official record of SEC court enforcement actions," and they include a summary of the SEC's allegations and, in the event of a settlement, a summary of the relief to which the parties agreed.  (Ex. 9 at 4.)  Litigation releases about the conclusion of an SEC enforcement action are "limited to publicly available factual information obtainable from public documents" (*id.*), and they are generally not proactively distributed to the media or posted to the SEC's social media accounts (Colorado Decl. ¶ 29).

The SEC also issues press releases from time to time to highlight certain "recent actions taken by the SEC and other newsworthy information."  (Colorado Decl. ¶ 31 & Ex. 12.)  Unlike litigation releases, SEC press releases are generally distributed via email to members of the media, can be posted to the SEC's primary social media account (*i.e.*, @SECGov on Twitter/X),

and are available in the "Newsroom" portion of its website.  (*Id.*)  Also unlike litigation releases, which only recite or summarize already-public information, SEC press releases often include statements by SEC Commissioners and/or senior officials about the subject of the press release. (*Id.* & Ex. 13.)

    **B.**    <u>The SEC Issued a Litigation Release About the Final Judgment but Not a Press Release.</u>

In September 2023, when the SEC commenced this action against Caridi, it issued a litigation release, including a three-paragraph summary of the SEC's allegations, a description of the relief the SEC sought, and a link to the SEC's Complaint.  (Ex. 10 (SEC Litig. Rel. No. 25847, dated Sept. 20, 2023).)  On January 8, 2025, after the Court entered the Final Judgment, the SEC issued a second litigation release, including a nearly identical summary of the SEC's allegations and a one-paragraph summary of the settlement terms—including that Caridi neither admitted nor denied the SEC's allegations.  (Ex. 11 (SEC Litig. Rel. No. 26213, dated Jan. 8, 2025 ("January 8 Litigation Release").)  The SEC did not issue a press release concerning the Final Judgment or settlement.  (Colorado Decl. ¶ 33.)

<b>STANDARD OF REVIEW</b>

A motion to vacate a consent judgment is governed by Rule 60(b) of the Federal Rules of Civil Procedure.  Rule 60(b) allows a district court to "relieve a party . . . from a final judgment" for enumerated reasons including, under Rule 60(b)(3), due to "fraud . . ., misrepresentation or other misconduct of an adverse party," or, under Rule 60(b)(6), for "any other reason justifying relief from the operation of the judgment."  *See* Fed. R. Civ. P. 60(b)(3), (6).[4]

---

[4] None of the other parts of Rule 60(b)—clauses (1), (2), (4), and (5)—appear relevant here.

"Properly applied, Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986).  For that reason, motions for relief from judgments under Rule 60(b) are generally "disfavored" in the Second Circuit.  *See, e.g., Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 385 F. App'x. 29, 31 (2d Cir. 2010) (summary order).  Vacatur of a final judgment can be granted only when the moving party demonstrates "exceptional circumstances."  *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001).

"A motion to vacate under Rule 60(b)(3) may be granted only if the Court finds 'clear and convincing evidence of material misrepresentations.'"  *See Krasniqi v. A Better Way Wholesale Autos, Inc.*, No. 18-cv-00058 (VLB), 2018 WL 11462399, at *6 (D. Conn. Dec. 13, 2018) (quoting *Speaks v. Donato*, 214 F.R.D. 69, 77-78 (D. Conn. 2008)).  This standard is met only by evidence satisfying "the factfinder that it is highly probable that what is claimed actually happened and it is evidence that is neither equivocal nor open to opposing presumptions." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*, 13 F.4th 247, 260 (2d Cir. 2021) (describing the "clear and convincing" evidence standard) (quotation omitted); *see also Ojo v. U.S.*, No. 15-cv-6089 (ARR) (LB), 2024 WL 3535415, at *1 (E.D.N.Y. July 25, 2024) ("Because of the extraordinary nature of the remedy, evidence in support of a motion under Rule 60 must be highly convincing.") (quotation omitted); *cf. Baltas v. Fitzgerald*, No. 21-cv-587 (MPS), 2023 WL 5207316, at *3 n.1 (D. Conn. Aug. 14, 2023) ("To satisfy the clear and convincing evidence standard, there must be 'evidence indicating that the thing to be proved is highly probable or reasonably certain.'") (quoting *Dongguk Univ v. Yale Univ.*, 873 F. Supp. 2d 460, 466 (D. Conn. 2012)).

"Rule 60(b)(6) is 'a catch-all provision that is properly invoked only when there are extraordinary circumstances justifying relief, when the judgment may work an extreme and undue hardship, and when the asserted grounds for relief are not recognized in clauses (1)-(5) of the Rule.'" *Pastor v. P'ship for Children's Rights*, 856 F. App'x. 343, 345 (2d Cir. 2021) (summary order) (quoting *Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 143 (2d Cir. 2020)).  Thus, where the movant's basis for vacating a judgment falls under Rule 60(b)(3), he may not obtain relief on that basis under Rule 60(b)(6).  *See Castro v. Bank of N.Y. Mellon*, 852 Fed. Appx. 25, 30 (2d Cir. 2021) (summary order).  Even where Rule 60(b)(6) is available, "[o]ur Court of Appeals has defined 'extraordinary circumstances' quite narrowly in an effort to preserve the finality of judgments." *Schiel v. Stop & Shop Co.*, No. 96-cv-1742 (WWE), 2006 WL 2792885, at *5 (D. Conn. Sept. 6, 2006) (citing *Gleason v. Jandrucko*, 860 F.2d 556, 559-60 (2d Cir. 1988)).

Additionally, where a defendant "wishes to disturb a consent judgment," the already-high Rule 60(b) standard is "even harder to reach."  *SEC v. NIR Group, LLC*, No. 11-cv-4723 (JMA) (AYS), 2022 WL 900660, at *2 (E.D.N.Y. Mar. 28, 2022) (quoting *SEC v. Alexander*, No. 06-cv-3844 (NGG) (RER), 2013 WL 5774152, at *2 (E.D.N.Y. Oct. 24, 2013)).  This is because a consent judgment is construed and interpreted as a contract between the settling parties.  *See U.S. v. ITT Cont'l Baking Co.*, 420 U.S. 223, 238 (1975); *Int'l Bhd. of Teamsters*, 247 F.3d at 408; *see also SEC v. Conradt*, 309 F.R.D. 186, 188 (S.D.N.Y. 2015) ("When it comes to civil settlements, a deal is a deal, absent far more compelling circumstances than are here presented [on defendants' Rule 60(b) motion].").  A contract to settle litigated claims is "binding and conclusive," and "'a court cannot relieve a party of her choice to settle simply because her assessment of the consequences was incorrect[.]'"  *Smith v. CVS Albany, LLC*, No. 20-4000,

2022 WL 3022526 (2d Cir. Aug 1, 2022) (summary order) (cleaned up) (quoting *Powell v. Omnicom*, 467 F.3d 124, 128 (2d Cir. 2007)).

While a court may liberally construe arguments that a *pro se* party makes under Rule 60(b), that party is "not relieved of his or her obligation to demonstrate extraordinary circumstances." *SEC v. Cohen*, 671 F. Supp. 3d 319, 322 (E.D.N.Y. 2023); *Ojo*, 2024 WL 3535415, at *1 ("*Pro se* litigants like [the defendant] are not excused from the requirement that they produce highly convincing evidence to support a Rule 60(b) motion.") (quotations omitted). Even a *pro se* movant must abide the "substantive requirements of motion practice." *Spurgeon v. Lee*, No. 11-cv-600 (KAM), 2019 WL 569115, at *2 (E.D.N.Y. Feb. 11, 2019) (cleaned up).

## ARGUMENT

Though Caridi does not style his Motion as one made under Rule 60(b), that rule governs motions like his to vacate consent judgments, as described above.  Caridi cannot satisfy his high burden on the Motion.  He offers no evidence that SEC counsel made any misrepresentation to him (because none was made) or that he was fraudulently induced into the settlement (because he was not), much less offer the highly convincing and unequivocal evidence necessary to undo a consent judgment.  Accordingly, his Motion should be denied.

## I.    CARIDI CANNOT SATISFY RULE 60(b)(3) BECAUSE THE SEC MADE NO MISREPRESENTATION TO HIM.

Caridi premises his Motion on his claim that the SEC promised him that it would not issue a press release about the settlement and that, had Caridi known the SEC would issue the January 8 Litigation Release summarizing the already-public Final Judgment, he would not have settled the SEC's securities fraud claims against him.  His claim is unsupported by any evidence, contradicted by the plain language of the Consent and Final Judgment, and therefore not credible—much less "clear and convincing," as required for vacating a Final Judgment under

15

Rule 60(b)(3).  *Krasniqi*, 2018 WL 11462399, at \*6 (quoting *Speaks*, 214 F.R.D. at 77).  Even if

the SEC had made such a misrepresentation (which it did not) any such misrepresentation would

not be "material" to the settlement, as required for relief under Rule 60(b)(3), because the Final

Judgment was and is public, regardless of the issuance of the January 8 Litigation Release.  *Id.*

No evidence supports Caridi's claim that the SEC or its counsel made any promise to or

reached any agreement with him limiting the SEC's ability to issue a press release or make a

public statement about this litigation after a Final Judgment.  SEC counsel specifically told

Caridi that it would not recommend a settlement that restricted the SEC's ability to speak

publicly about this matter or respond to press inquiries and that the Consent and Final Judgment

must be public documents.  (Colorado Decl. ¶¶ 2, 13, 16.)  Caridi has offered no document

suggesting anything to the contrary, because none exists.

Caridi's purported "evidence" of an agreement or promise by the SEC or its counsel does

not support his claim.  Caridi points to an October 14, 2024, email that ***he (not SEC counsel)

sent*** and a voicemail the same day that ***he (not SEC counsel) left***, each predating the Consent, in

which Caridi proposed two settlement terms:  (1) that he pay his $180,000 civil penalty one year

after any final judgment; and (2) that the SEC not issue a press release or speak to the press

about any final judgment—and, as to these proposals, Caridi said, "Let me know if that's

acceptable."  (Ex. 3 at 2; Colorado Decl. ¶ 11.)  The parties then discussed those two proposals,

SEC counsel rejected the second proposal, and the first proposal, in a modified form proposed by

SEC counsel, became part of Caridi's settlement offer, but Caridi's second proposal did not.

(Colorado Decl. ¶¶ 13-15, 18 & Ex. 5.)  Indeed, the payment schedule term was reflected in the

Consent that Caridi signed and in the Final Judgment, whereas Caridi's (rejected) proposal

concerning public statements was not.  (*Id.* ¶ 18 & Ex. 5 at 14, Part V.)

Furthermore, Caridi's signed Consent contradicts his claim. His Consent—which Caridi's lawyer reviewed and addressed with SEC counsel before Caridi signed it in front of a notary public (Colorado Decl. ¶¶ 19-22 & Ex. 7 at 3-4, ¶ 7)—expressly disclaims that the SEC or its counsel had made any promises to him concerning any topic.

Taken together, this evidence does not show any representation by SEC counsel (much less a misrepresentation) and is neither "highly convincing" evidence nor "evidence that is neither equivocal nor open to opposing presumptions" that supports vacating the Final Judgment. *See Spaulding v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 143, 150 (E.D.N.Y. 2017) (denying motion to vacate settlement where "[n]one of documents [movant] attaches to her letters suggests that [non-movant] made [claimed] representation"). Nor does Caridi's affidavit, consisting of unsupported and conclusory claims, demonstrate such "highly convincing" and unequivocal evidence. *See Best v. Barbarotta*, No. 12-cv-6142 (NGG) (SMG), 2019 WL 3886618, at *4 (E.D.N.Y. Aug. 19, 2019) (movant's "self-serving statement . . . does not constitute highly convincing evidence and is therefore insufficient to meet the 'strict evidentiary requirements of Rule 60(b),' which 'apply as well to *pro se* litigants'") (quoting *Manney v. Intergroove Media GMBH*, No. 10-cv-4493 (SJF), 2014 WL 1224171, at *3 (E.D.N.Y. Mar. 24, 2014)).

Neither the SEC nor its counsel concealed anything about the settlement from Caridi, and his false and unsupported claim that the SEC made an unwritten promise to him does not support vacating the Final Judgment. *See U.S. v. Sybaritic, Inc.*, 456 F. Supp. 2d 1160, 1171 (D. Minn. 2011) (denying motion to vacate under Rule 60(b)(3) based on allegation that government misrepresented the meaning of a settlement term where movant could have negotiated different language in the settlement); *see also Best v. Schecter*, No. 12-cv-6142 (NGG), 2018 WL 4635726, at *5-6 (E.D.N.Y. Feb. 22, 2018) (denying motion to vacate under Rule 60(b)(3) where

non-movant "did nothing to conceal their position or trick [movant] into accepting" the settlement).

Caridi makes the same argument—that the SEC purportedly promised it would not issue a "press release" concerning the settlement and then breached that promise by issuing the January 8 Litigation Release—and characterizes it as a breach of the duty of good faith and fair dealing, promissory estoppel, and fraudulent inducement. (Motion at 5-6.) None of those doctrines or causes of action apply. A duty of good faith and fair dealing applies to a party's performance of a contract term, it does not apply to settlement negotiations and cannot be used to create a new contract term. *See Eastern Savings Bank v. Marcus*, No. 14–cv–1059 (DJS), 2015 WL 5472314, at *5 (D. Conn. Sept. 16, 2015) ("The implied covenant of good faith and fair dealing 'cannot be applied to achieve a result contrary to the clearly expressed terms of a contract, unless, possibly, those terms are contrary to public policy.'") (quoting *Southbridge Assocs, LLC v. Garofalo*, 53 Conn. App 11, 19 (App. Ct. 1999); *State St. Bank and Trust Co. v. Invesiones Errazuriz Limitada*, 246 F. Supp. 2d 231, 241-42 (S.D.N.Y. 2002) ("Nor does the covenant apply to settlement negotiations, extensions, or modifications of the existing contract.") (New York law). In any event, the SEC and its counsel acted in good faith with respect to Caridi at all times.

Promissory estoppel requires evidence of a "definite" promise, that the movant had no reasonably available means of knowing whether the promise was true or false, and that—where a government entity is involved—the purported maker of the promise had authority to bind the government. *See Chotkowski v. State*, 240 Conn. 246, 268-69 (1997). Here, no promise was made, Caridi knew and had access to the settlement terms, and the purported maker of the promise, SEC counsel, did not have authority to bind the SEC with respect to such a promise if

18

made (which it was not), as had been explained to Caridi. Finally, fraudulent inducement concerns statements of present fact—not promises of future action or intent, which are governed by the terms of the contract. *See United States Reg'l Econ. Dev. Auth., LLC v. Matthews*, No. 16-cv-01093 (CSH), 2017 WL 5992384, at *7 (D. Conn. Dec. 4, 2017). The contract includes no terms restricting the SEC's future ability to issue a press release or make any public statement.

Finally, even if the SEC had promised not to issue a press release about any final judgment when negotiating the settlement—which it did not—any such promise could not have been material, and Caridi's claim that he would not have agreed to settle if he had known the January 8 Litigation Release was forthcoming (Motion at 8) is not credible. *See Krasniqi*, 2018 WL 11462399, at *6 (stating that vacating a judgment under Rule 60(b)(3) requires "*material* misrepresentations") (emphasis added). The fact of a settlement by Caridi with the SEC and the terms of that settlement would necessarily be public and a matter of public interest. Caridi was not (and does not claim he was) entitled to hide his settlement with the government from the public. In these circumstances, even if the SEC or its counsel had agreed or promised not to issue a press release (which the SEC did not issue in any case), a litigation release summarizing the already-public Final Judgment cannot have been material—an additional reason Caridi cannot satisfy his heavy burden under Rule 60(b)(3) for obtaining an order vacating the Final Judgment.

## II.    CARIDI CANNOT SATISFY RULE 60(b)(6) BECAUSE HE CAN IDENTIFY NO OTHER "EXCEPTIONAL CIRCUMSTANCES."

Rule 60(b)(6) provides relief from a final judgment only in "extraordinary circumstances," a term that courts narrowly construe. *Schiel*, 2006 WL 2792885, at *5. Caridi's assertions that fall under Rule 60(b)(3)—his arguments concerning the SEC's supposed fraud,

promises, or misrepresentations—provide no basis for relief under Rule 60(b)(6).  *Pastor*, 856 F. App'x. at 345.  Caridi's other complaints, primarily duress and reputational harm—mentioned in passing without any evidence—also fail as grounds for relief under Rule 60(b)(6).

First, Caridi claims that he signed and delivered the Consent and consented to entry of the Final Judgment only under duress, including ongoing discovery by the SEC.  (Motion at 4-5.) Caridi's claimed duress is not a basis for vacatur.  To prevail on a claim of duress, Caridi bears a heavy burden:

> Duress may not be found merely from the existence of a difficult bargaining position or the pressure of financial circumstances.  To succeed on a theory that an agreement was procured by duress, a plaintiff must show that he was compelled to agree to its terms by way of wrongful and oppressive conduct that precluded the plaintiff from the exercise of his own free will.

*McIntosh v. Consol. Edison*, No. 96-cv-3624 (HB), 1999 WL 151102, at *2 (S.D.N.Y. Mar. 19, 1999) (denying motion to set aside settlement agreement), *aff'd*, No. 99-7492, 2001 WL 1669111 (2d Cir. June 8, 2002).

Caridi has not shown and cannot show any such duress.  As an initial matter, when Caridi made his settlement offer to the SEC, he represented in the Consent that he was doing so voluntarily and not based on any threats—in other words, not under duress.  (Ex. 5 at 3-4, ¶ 7.) This alone is sufficient to reject Caridi's argument.

Even aside from that representation, Caridi fails to identify any duress that supports his Motion.  No evidence shows that Caridi was threatened, forced, or deprived of free will as to the settlement, and Caridi does not point to any.  While Caridi may have experienced the discomfort of discovery in this litigation, that is not duress:  parties are entitled to take discovery in a civil litigation.  *See Playboy Enters. Int'l v. On Line Entmt., Inc.*, No. 00-cv-6618 (DGT), 2004 WL 626807, at *8 (E.D.N.Y. Mar. 29, 2004) (denying motion to vacate settlement agreement where

20

"defendants have failed to meet the burden of proving duress by physical compulsion, duress by threat, or duress by undue influence").  His duress argument should be rejected.

Second, Caridi appears to suggest that he should be released from obligations under the Final Judgment because the January 8 Litigation Release has caused harm to some unspecified business relationships or his financial circumstances.  (Motion at 6.)  This type of purported reputational harm is not a basis to vacate a judgment and certainly not here, where the Final Judgment was and remains public regardless of the January 8 Litigation Release.  *See Leser v. U.S. Bank Nat'l Ass'n*, No. 09-cv-2362 (KAM), 2014 WL 2154993, at *5 (E.D.N.Y. May 22, 2014) (finding that effect of judgment on defendant's "reputation, his businesses, or the parties and investors in his businesses" is no basis to vacate a judgment and that "the public has a strong interest in knowing" the facts of the judicial proceeding and its outcome).  Yet even if the purported harm to his business relationships or financial circumstances could be sufficient to vacate the Final Judgment, Caridi offers no evidence that any interruption in those relationships or his financial condition was due to the January 8 Litigation Release.  Any harm to Caridi's businesses or reputation, or deterioration of his financial circumstances, was at least as likely the result of the Ontario court's finding that he was liable on a "claim in deceit" to a nonprofit teaching hospital for more than $11 million for misleading that hospital at the outset of the Covid-19 pandemic when it was in desperate need of medical supplies.  For this additional reason, Caridi's claimed reputational or financial harm is not a basis to vacate the Final Judgment.  *See SEC v. Penn*, No. 14-cv-581 (VEC), 2019 WL 12275915, at *4 (S.D.N.Y. Jan. 3, 2019) (denying motion to vacate final judgment based on collateral consequences of another proceeding against defendant).

In sum, Caridi offers no genuine basis for vacating the Final Judgment, much less the "extraordinary circumstances" required to do so under Rule 60(b)(6). *See Schiel*, 2006 WL 2792885, at *5.

## CONCLUSION

The Commission respectfully requests that the Court deny the Motion in its entirety.

Dated:  New York, NY
       February 24, 2025

Respectfully submitted,

/s/  Christopher M. Colorado
Christopher M. Colorado
Securities and Exchange Commission
100 Pearl Street, Suite 20-100
New York, NY 10004-2616
212-336-9143

*Attorney for Plaintiff*