# Exhibit 9

## SEC ADMINISTRATIVE REGULATION

**U.S. Securities and Exchange Commission**                                      **SECR 18-2**
**Office of Public Affairs**                                                                   **May 8, 2019**
**Washington, D.C. 20549**

## MEDIA RELATIONS POLICY

This administrative regulation reissues the U.S. Securities and Exchange Commission's (SEC) policy regarding media relations.  This regulation provides guidance and support to SEC staff who may have occasion to deal with the news media.  This policy applies to all SEC offices, divisions, groups and staff, including employees, interns and fellows.

This policy will be reviewed at least once every three years to ensure the contents remain relevant and reflect current Federal laws, rules, regulations, and the SEC regulations and policies.

**Summary of Changes**. This revision supersedes SECR 18-2, Press Relations Policies and Procedures, dated July 31, 2005.  The revision changes the title and makes updates throughout, including updates to conform with recent changes to SECR 23-2, Safeguarding Nonpublic Information.

//Signature on file//
John Nester
Director
Office of Public Affairs

SECR 18-2
May 8, 2019

## SEC ADMINISTRATIVE REGULATION
## MEDIA RELATIONS POLICY

**1.  Purpose and Scope**

This regulation provides guidance and support to SEC staff who may have occasion to deal with the news media.  Effective media relations are very important to the SEC's ability to accurately inform the public and increase public understanding of its actions and views.  The Commission's media policy also helps protect staff from making erroneous, misleading, or improper statements to the news media.

**2.  Policy**

The SEC's contacts with the news media foster public understanding of the SEC's work and are handled expeditiously, effectively, and consistent with SEC obligations.  Any SEC staff contacts with the media are handled in accordance with this regulation and in a manner that protects Nonpublic Information from unauthorized disclosure.

**3.  Media Relations General Procedures**

**3.1.  Disclosure of Nonpublic Information.**
SEC staff members are prohibited from disclosing SEC Nonpublic Information unless authorized to do so.  This prohibition applies to unauthorized disclosure to the news media.  No separate authorization is required for a disclosure made by the National Treasury Employees Union, in its capacity as the exclusive representative for SEC bargaining unit employees, if the content of the disclosure is authorized for release pursuant to applicable law or collective bargaining agreement.

**3.2.  Inquiries from Reporters.**
Although many media inquiries are directed initially to the Office of Public Affairs (OPA), sometimes reporters will directly contact the office or individual responsible for a given program or project.  An employee who receives such an inquiry usually should courteously and expeditiously refer the reporter to OPA, which will determine an appropriate course of action in consultation with the relevant Commission offices and officials.  Staff members are not prohibited from providing publicly available factual information.  In the event that a staff member is authorized by OPA to speak to a reporter, the following apply:

    a)  **Factual, Public Information.**  Discussions with reporters are generally limited to disclosure of publicly available factual information.

    b)  **Policy Questions.**  Media inquiries which require discussion of SEC policy should be handled only by those senior managers who have access to all relevant information.  In most cases this will be a director, deputy or associate director of a division, an office head, or a regional director.

   c) **Pending Litigation.**  Ordinarily, no comment should be made concerning pending litigation to which the SEC is a party, except for factual statements about the law or facts already available in the public record, and only to the extent permissible under applicable rules of professional conduct and any relevant court rule governing trial publicity.

## 3.3.    Attribution of Information.

The value of information provided by members of the SEC's staff is increased and the credibility of the SEC is enhanced when the source of the SEC information is clearly identified.  The public may view news articles that attribute SEC information to anonymous sources as less reliable.  Such articles also may generate misunderstanding which could significantly hamper the SEC's ability to deal with important regulatory or law enforcement issues.  SEC staff members should not communicate with reporters about SEC matters on a not-for-attribution, off-the-record, or background basis unless the discussion is limited to publicly available factual information or is authorized by OPA.

## 3.4.    Expressions of Personal Opinion.

When authorized to speak for the SEC, staff members ordinarily will not be authorized to express personal opinions.  When not authorized to speak for the SEC, staff members should be highly cautious about expressing personal opinions about SEC matters to members of the news media.  Such statements may be erroneously perceived as official statements of the SEC, as reflecting SEC policy, or as official interpretations of SEC policy.

## 3.5.    Reports of Media Contacts.

Staff members should promptly consult with supervisors or advise OPA about media inquiries which are other than of a strictly routine nature.  If in doubt as to whether notification to OPA is appropriate in a particular instance, staff members should assume that it is.  Prompt notice ensures that OPA will be aware of media interest in a particular area, of impending news stories which may affect the SEC, and of information concerning the SEC which has been furnished to the media.  This knowledge helps OPA to attempt to correct any misconceptions on the part of reporters; prevent inaccuracies in news reports; furnish additional information when appropriate; and assure that reporters are aware of all pertinent aspects of an issue in which they are interested.

## 3.6.    Announcement of SEC Actions.

Official announcements of the SEC are released to the news media and the public by OPA. Staff members should keep in mind that such announcements are not public until released by OPA.  Since there usually is a delay between the time of SEC approval and the time of public release, staff members should ascertain whether a particular document has in fact been released before furnishing it to any person outside the SEC.

## 3.7.    Official Releases.

Official SEC statements describing formal SEC actions (official releases) are approved by the SEC and reviewed and assigned a number by the Office of the Secretary according to the act under which they are issued.

**3.8.   Administrative Proceedings.**
Enforcement actions in which the SEC proceeds administratively are announced by publication of orders by which the Commission institutes, and in many instances simultaneously settles, the proceedings.  The orders are made available on the Commission's website, www.sec.gov.

**3.9.   Trading Suspensions.**
When the SEC orders trading suspended in a particular security, the Division of Enforcement prepares an official release that is reviewed and assigned a number by the Office of the Secretary.  Such actions are publicly announced by the Office of the Secretary.

**3.10.  Court Enforcement Actions.**
SEC enforcement actions involving litigation are announced by means of litigation releases prepared by the Division of Enforcement or by the responsible regional office, as appropriate.  Such releases should be based upon the SEC's complaint or other public documents filed in court, or upon the ruling of a court. Litigation releases should be prepared in advance unless an emergency situation precludes such preparation, so that enforcement actions may be announced as soon as they are filed in court.  For detailed instructions for preparation of litigation releases, see paragraph 3.11.

**3.11.  Litigation Releases.**
These releases inform the public of an SEC enforcement action and are a permanent, official record of SEC court enforcement actions.

Litigation releases should summarize in plain English the substance of an enforcement action, concentrating on the most significant aspects.  They should contain, at a minimum, the following information:

- A summary of the allegations in the SEC's complaint, including a plain English description of the statutory provisions or SEC rules alleged to have been violated;
- A summary of the alleged course of conduct and when it took place, as stated in the complaint;
- A summary of any consent decree entered into, including ancillary relief, if any;
- Clear identification of the defendant(s) by name, geographic location and, when appropriate, line of business or occupation.

**NOTE:**   Since the SEC expects defendants who enter into negotiated settlements of SEC actions not to make public statements inconsistent with the terms of such settlement, SEC employees should likewise avoid any such inconsistent statements.  Explanations of enforcement actions, since they are limited to publicly available factual information obtainable from public documents, may be made either for attribution or on a not-for-attribution basis (see paragraph 3.3).

SECR 18-2
May 8, 2019

4. **Authority**

- This regulation is issued under the authority of the Chief Operating Officer (COO) set forth at 17 C.F.R. § 200.13. The COO is responsible for developing and executing the overall management policies of the Commission for its operating divisions and offices, and is charged with improving agency performance.

- SECR 23-2, Safeguarding Nonpublic Information.

5. **Applicability**

This regulation applies to all SEC offices, divisions, groups and staff, including employees, interns and fellows.

6. **Definitions**

**SEC Information -** Information created, developed, processed, managed, owned, and/or received by, or on behalf of, the SEC. SEC Information may be Public or Nonpublic and may be in the form of documents, email, computer files, oral statements, mobile and handheld devices, and audio or video recordings. For purposes of this regulation, personal communications of staff unrelated to official business are not considered SEC Information.

**Nonpublic Information -** As defined in SECR 23-2, Nonpublic Information is SEC Information "that the employee gains by reason of Federal employment and that he knows or reasonably should know has not been made available to the general public. It includes information that he knows or reasonably should know . . . [i]s designated as confidential by an agency." Standards of Ethical Conduct for Employees of the Executive Branch, 5 C.F.R. § 2635.703(b)(2). Nonpublic Information includes, but is not limited to, SEC Information that is protected from disclosure by law, or any information the loss, misuse, unauthorized access or modification of which could adversely affect national interests, the conduct of SEC programs, or the privacy to which individuals are entitled under the Privacy Act. Unless SEC Information has been made available to the general public in accordance with SECR 23-2, SEC Information should be treated as Nonpublic Information. For questions on whether particular information constitutes Nonpublic Information, consult with OGC's Office of Litigation and Administrative Practice prior to disclosure.

7. **Responsibilities**

**7.1. Office of Public Affairs.**

OPA has primary responsibility for disseminating to the news media information concerning SEC activities, and the Director of that Office generally serves as the SEC's official spokesperson. More broadly, OPA is also responsible for all aspects of SEC liaison with the news media. Should any question arise concerning media relations, members of the staff should contact OPA or consult with supervisors who, in turn, should seek the advice of OPA.

**7.2.  Division Directors, Office Heads, and Regional Directors.**
The heads of divisions, offices and regions are responsible for ensuring that contacts between members of their staff and news media are conducted in an effective and appropriate manner in coordination with OPA.

### Notice

These provisions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by existing statute or Executive order relating to (1) classified information, (2) communications to Congress, (3) the reporting to an Inspector General of a violation of any law, rule, or regulation, or mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, or (4) any other whistleblower protection.  The definitions, requirements, obligations, rights, sanctions, and liabilities created by controlling Executive orders and statutory provisions are incorporated into this agreement and are controlling.